UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LUCIO LANDEROS-VALDEZ,<br><br>Defendant. | Case No. 1:11-cr-0096-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendant Lucio Landeros-Valdez's Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3482(c)(1)(A). *See* Dkt. 215. This is the second time Landeros has moved for compassionate release, and the government once again opposes the motion. For the reasons explained below, the Court will deny the motion.

## BACKGROUND

In 2011 a jury convicted Landeros of possession with intent to distribute 50 grams or more of pure methamphetamine. Dkt. 122. Roughly six years earlier, in 2005, Landeros had pled guilty to felony trafficking in a controlled substance in Nevada. PSR ¶ 29. Although Landeros was 17 at the time of the Nevada offense, the plea agreement certified him as an adult. *Id.*

At the time Landeros was sentenced for his federal conviction, 21 U.S.C. § 841(b)(1)(A)(viii) required that an individual convicted of a prior felony drug offense be sentenced to not less than 20 years. In 2018 Congress passed the First Step Act. PL 115-391, December 21, 2018, 132 Stat 5194. Section 401 of the First Step Act reduced the mandatory-minimum sentence from 20 years to 15 years for defendants with a previous drug conviction. Congress also provided that the amendments made by Section 401 "shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment."

At sentencing, the Court determined that Landeros's adjusted offense level was 34, which, with a criminal history category II, yielded a guideline range of 168 to 210 months. Because the mandatory-minimum sentence of 20 years was above the guideline range, however, the Court sentenced Landeros to 240 months. Landeros appealed his conviction arguing (1) that there was not sufficient evidence to support the conviction, and (2) that this Court erred in imposing the 20-year mandatory minimum sentence. The Ninth Circuit rejected both arguments and affirmed the conviction.[1] In May 2020, Landeros filed his first motion for

---

[1] Landeros's trial counsel had not filed an objection to the PSR's determination that the 20-year mandatory minimum sentence applied. Because the Landeros had not objected at sentencing, the Ninth Circuit reviewed for plain error. *See* Dkt. 193.

compassionate release, which the Court denied. *See Mar. 9, 2021 Order,* Dkt. 214.
Landeros has now filed his second motion for compassionate release. He is
incarcerated at Memphis FCI, and his projected release date is April 9, 2029. *See*
https://www.bop.gov/inmateloc/ (accessed Jan. 10, 2025).

## LEGAL STANDARD

"A judgment of conviction that includes a sentence of imprisonment
constitutes a final judgment and may not be modified by a district court except in
limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting
18 U.S.C. § 3582(b)) (cleaned up). Congress provided one such exception in 18
U.S.C. § 3582(c)(1)(A)(i). Section 3582(c)(1)(A)(i) provides that a district court
may modify a final sentence in some situations, which will be described further
below. Before filing such a motion, however, defendants must exhaust their
administrative remedies. *United States v. Keller*, 2 F.4th 1278, 1282 (9th Cir.
2021). The court must then make three findings: (1) a reduced sentence is
consistent with applicable policy statements issued by the U.S. Sentencing
Commission; (2) the applicable sentencing factors set forth in 18 U.S.C. § 3553(a)
favor relief; and (3) "extraordinary and compelling reasons" warrant a reduction.
18 U.S.C. § 3582(c)(1)(A)(i). If any one of these factors is not met, the court may
deny relief. *Keller*, 2 F.4th at 1284. The defendant bears the burden of establishing
these requirements by a preponderance. *See United States v. Sprague*, 135 F.3d

1301, 1306-07 (9th Cir. 1998); *Walton v. Arizona*, 497 U.S. 639, 650 (1990) (holding that a defendant's due process rights "are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency"), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584, 609 (2002).

The Sentencing Commission's policy statements at § 1B1.13 of the Sentencing Guidelines state that "extraordinary and compelling reasons" include: (1) a defendant's serious medical condition; (2) a defendant's age combined with serious deterioration in physical or mental health due to the aging process; (3) a defendant's family circumstances where the defendant becomes the only available caregiver for a close relative; (4) a defendant's suffering abuse by an employee or contractor of the Bureau of Prisons (the "BOP"); (5) any other circumstance or combination of circumstances that are "similar in gravity" to the four reasons just listed; or (6) a change in the law in cases where (a) the defendant received an "unusually long sentence," (b) the defendant has already served 10 years of that lengthy sentence; and (c) the change in the law would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed. *See* U.S.S.G. § 1B1.13(b). As another court in this District recently noted, the catch-all clause at U.S.S.G. § 1B1.13(b)(5)—that is, the clause indicating that courts may find an extraordinary and compelling reason for other

circumstances, or combination of circumstances, of similar gravity to those set forth in subsections (b)(1) through (4)—affords courts "significant leeway in defining precisely what qualifies as an extraordinary and compelling reason." *United States v. Schmidt*, No. 4:19-cr-00371-DCN, 2024 WL 1158331, at *2 (D. Idaho Mar. 18, 2024). The policy statements also provide that before a sentence may be reduced, the Court must find that the defendant is not a danger to the safety of any other person or to the community. *Id*. § 1B1.13(a)(2).

Until recent amendments, U.S.S.G. § 1B1.13 addressed only motions brought by the Director of the Bureau of Prisons (BOP)—and not those brought by defendants individually. *See United States v. Aruda*, 993 F.3d 797, 801–02 (9th Cir. 2021). District courts were free to consult the statements as persuasive authority, but the Ninth Circuit made clear that the statements were not binding. *Id.* at 802. Under recent amendments, however, § 1B1.13 expressly applies to motions brought by the BOP Director *and* to those brought by individual defendants. U.S.S.G. § 1B1.13(a). Along with its sister district courts in the Ninth Circuit, the Court understands these amendments to resolve the discrepancy highlighted in *United States v. Aruda*, 993 F.3d 797 (9th Cir. 2021) and to make U.S.S.G § 1B1.13 binding. *Accord Schmidt,* 2024 WL 115831, at *2.

# ANALYSIS

## A.    Exhaustion of Administrative Remedies

The Court must first decide whether Landeros exhausted his administrative remedies. Landeros's mother submitted a request to the Warden, and 30 days have passed since that letter was sent. Based on these facts, the government does not context exhaustion. *See Response,* Dkt. 218, at 6 n. 4. Accordingly, the Court finds that Landeros has exhausted his administrative remedies.

## B.    Extraordinary and Compelling Reasons

Turning to the merits, the Court must next consider whether there are "extraordinary and compelling reasons" and whether a sentence reduction would be consistent with applicable policy statements issued by the Sentencing Commission. *See* 18 U.S.C. § 3582(c)(1)(A)(i). Landeros mainly relies on a recently enacted amendment to the sentencing guidelines, which states that defendants are eligible for relief if they "receive[] an unusually long sentence" (as Landeros argues he has) and have served "at least 10 years of the term of imprisonment" (as Landeros has). *See* U.S.S.G. § 1B1.13(b)(6). In those circumstances, the Court may consider "a change in the law . . . in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and

after full consideration of the defendant's individualized circumstances." *Id.*[2]

These revisions to the guidelines took effect on November 1, 2023, and Landeros

filed this motion in June 2024.

### 1. Validity of Sentencing Guidelines § 1B1.13(b)(6)

The government argues that the Court should deny the motion because the

Sentencing Commission exceeded its delegated authority in promulgating

§ 1B1.13(b)(6).[3] *See Response,* Dkt. 218, at 6-15. Upon consideration, and

---

[2] In full, § 1B1.13(b)(6) states:

> Unusually Long Sentence—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

This sub-section is meant to be read in tandem with § 1B1.13(c), which provides as follows:

> Limitation on Changes in Law—Except as provided in subsection (b)(6), a change in the law . . . shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law . . . may be considered for purposes of determining the extent of any such reduction.

[3] The Commission submitted its changes to Guidelines § 1B1.13, which included the addition of subsection (b)(6) and (c), along with other amendments, to Congress on April 27, 2023. *See https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023* (last visited Nov. 22, 2024). Congress took no action to specifically modify or disapprove of these amendments; thus, they became effective on November 1, 2023. *Id.*; see 28 U.S.C. § 994(p).

consistent with the Ninth Circuit's decision in *United States v. Chen*, 48 F.4th 1092 (9th Cir. 2022) and the Supreme Court's decision in *Concepcion v. United States*, 597 U.S. 481 (2022), the Court rejects this argument.[4] *Accord United States v. Adley*, No. 03-20678-CR-ALTONAGA, 2024 WL 19618484, *4 (S.D. Fla. May 3, 2024) (observing that it was joining chorus of other districts courts within the Eleventh Circuit that had rejected a similar argument). In *Chen,* the Ninth Circuit held that "a district court may consider the First Step Act's non-retroactive changes to sentencing law, in combination with other factors particular to the individual defendant, when determining whether extraordinary and compelling reasons exist for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)." 48 F.4th at 1093. When the Sentencing Commission enacted Guidelines § 1B1.13(b)(6), it essentially agreed with the basic principle set forth in *Chen* and similar cases, though it adopted a "tailored approach that narrowly limits that principle [i.e., that district courts may properly consider nonretroactive changes in the law in the compassionate-release context] in multiple ways." The Ninth Circuit's approach lines up with the new policy statement, and the Court is not persuaded that § 1B1.13(b)(6) is invalid.

---

[4] Many district courts around the nation have rejected this argument.

### 2. Applicability of Sentencing Guidelines § 1B1.13(b)(6) as to Landeros

Having determined that § 1B1.13(b)(6) is valid, the Court will analyze

whether it affords any relief to Landeros.

### a. *Unusually Long Sentence & Service of Ten Years*

The first two questions are whether Landeros received an "unusually long"

sentence and, if so, whether he has served at least 10 years of that sentence.

Landeros has indisputably served at least 10 years of his 20-year sentence, and the

Court finds that Landeros's 20-year sentence is "unusually long" within the

meaning of § 1B1.13(b)(6). While Sentencing Commission has not defined

"unusually long," it has provided some helpful statistical information. Between

fiscal year 2013 and fiscal year 2022, fewer than 12 percent of all offenders were

sentenced to a term of imprisonment of 10 years or more.[5] (Landeros was

sentenced in February 2012—just a few months before the beginning of that 10-

year period. By that measure, then, Landeros's sentencing is unusually long. *See*

*United States v. Howard*, No. 13-CR-0629 (ELH), 2024 WL 112010, at *15–16

(D. Md. Jan. 10, 2024) (holding that 235-month sentence was "unusually long"

compared to average length of all sentences imposed nationwide).

Landeros's 20-year sentence is also "unusually long" because it was six

---

[5] *See https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023*, at 12 (last visited Nov. 22, 2024).

years above the low end of the advisory guidelines range at sentencing, and two

and one-half years above the high end of that range. Putting the statutory

mandatory minimum aside, the advisory range would have been 168 to 210

months. Granted, because of the statutory mandatory minimum, defendant was

sentenced outside that range because of his prior conviction and as required by

U.S.S.G. § 5G1.1(b), which states that "[w]here a statutorily required minimum

sentence is greater than the maximum of the applicable guideline range, the

statutorily required minimum sentence shall be the guideline sentence." Still,

though, if that 20-year mandatory minimum had not been in place, the Court

almost certainly would have imposed a sentence at either the middle or the low end

of the guidelines range. This is borne out by the statements the Court made during

the sentencing hearing. Here is the relevant section of the sentencing transcript:

> So in any event, based upon that, the court will impose the following
> sentence [of 240 months] which it deems to be reasonable and just –
> *actually, I don't know that I can say that it is reasonable and just, but
> it's what the law requires.*

Sentencing Tr., Dkt. 186, at 9:8 to 10:12 (emphasis added); *cf. United States v.*

*Byam*, No. 12 Cr. 586 (OEM), 2024 WL 1556741, at *6 (E.D.N.Y. Apr. 10, 2024)

(finding it clear that sentencing judge viewed mandatory minimum imposed as

"unusually long" based on comments at sentencing). Under these circumstances,

the Court has no difficulty concluding that Landeros's sentence was "unusually

long" within the meaning of § 1B1.13(b)(6).

### b. *Gross Disparity*

The next question is whether there is a gross disparity between the sentence Landeros received vis-à-vis the sentence he would receive today. Landeros argues that if he were sentenced today, he would face a 10-year mandatory minimum rather than a 20-year mandatory minimum. That is incorrect. At the time Landeros was sentenced, 21 U.S.C. § 841(b)(1)(A)(viii) required that individuals convicted of a prior felony drug offense be sentenced to a minimum of 20 years' incarceration. The First Step Act, passed in 2018, reduced that mandatory-minimum sentence from 20 years to 15 years. *Compare* 21 U.S.C. § 841(b)(1)(A)(viii) (2012) *with* 21 U.S.C. § 841(b)(1)(A)(viii)(2024). The First Step Act also changed the rules for a qualifying prior felony drug conviction. Currently, a qualifying prior felony drug conviction is one where the offender *served* more than one year in jail. *See* 21 U.S.C. § 802(57) (defining a "serious drug felony" to include offenses described in 18 U.S.C. 924(e)(2) "for which the offender *served* a term of imprisonment of more than 12 months . . . .") (emphasis added). Previously, the question was whether the prior drug conviction was *punishable* by more than one year. *See* 21 U.S.C. § 802(44)(defining a "felony drug offense" as one "*punishable* by imprisonment for more than one year under any law of the United States or of a State . . . ."). Landeros says he would benefit from this change because he served just nine months for his prior felony drug

conviction. Put differently, he says that if he were sentenced today, he wouldn't have a qualifying prior drug conviction.

Landeros hasn't come forward with any evidence showing that he served just nine months for his prior offense, and the PSR indicates that Landeros served around 14 months for that offense. As Landeros acknowledges, he was sentenced to a minimum of 12 months' and a maximum of 30 months' incarceration. *See PSR* ¶ 29. He was arrested on February 14, 2005 and sentenced on July 22, 2005. *Id.* At sentencing, he received 145 days' credit for time served.[6] *Id.* He was then released to ICE on April 13, 2006. *Id.* The upshot is that while Landeros may have served around nine months' after the Nevada court pronounced sentence in July 2005,[7] he received credit for 145 days (nearly five months) for time served—meaning that he served just under 14 months for that offense. Thus, even under today's regime, Landeros would face a 15-year mandatory minimum.

The question then becomes whether a 15-year sentence is grossly disparate from a 20-year sentence for purposes of § 1B1.13(b)(6). Notably, Landeros does not argue that a five-year discrepancy constitutes a gross disparity. His argument

---

[6] There are 158 days between February 14, 2005 and July 22, 2005, and it's unclear why defendant received 145 days credit for time served, rather than 158. Nevertheless, that 13-day discrepancy is not relevant here.

[7] There are 8 months and 22 days between July 22, 2005 and April 13, 2006.

rests on the faulty premise that there is a 10-year sentencing disparity at issue. *See, e.g., Mtn.*, Dkt. 216, at 10. The Court touched on the five-year discrepancy in its earlier decision, in the context of observing that Landeros's sentence was not enhanced due to prior § 924(c) convictions. There, the Court stated that

> the discrepancy between the sentence imposed and the sentence that may have been imposed today is not "draconian." Landeros was sentenced to the 20-year mandatory minimum. If the Court were to sentence him today, it would still be required to impose a 15-year mandatory minimum sentence. At most, this resulted in a 5-year discrepancy. Not a 30-year discrepancy like offenders subject to § 924(c) "stacking."

*Mar. 9, 2021 Order,* Dkt. 214, at 5-6 (footnote omitted). The Court issued this decision in March 2021—before the Sentencing Commission amended § 1B1.13 of the guidelines. As such, the Court did not specifically address whether there is a "gross disparity" between a 15-year and a 20-year sentence for purposes of § 1B1.13(b)(6). The Court will now clarify what its previous ruling suggested— namely that it does not view this five-year discrepancy to be "grossly disparate."

The Sentencing Commission did not define what rises to the level of a "gross disparity," and the Ninth Circuit has yet to issue any guidance. Under these circumstances, the Court will start with the dictionary, which defines "gross" as "glaringly noticeable . . . ." *See https://www.merriam-webster.com/dictionary/gross* (accessed Jan. 10, 2025); or "[c]onspicuous by reason of size or other attention-getting qualities." *Gross, Black's Law Dictionary*

(11th ed. 2019). Courts around the country often refer to these dictionary definitions in assessing whether a given sentencing disparity is glaringly noticeable, but they have reached differing results as to what constitutes a gross disparity within the meaning of § 1B1.13(b)(6). *See United States v. Douglas*, No. 11-CR-0324 (PJS/LIB), 2024 WL 2513646, at *2 (D. Minn. May 24, 2024) (observing that courts have reached "markedly different conclusions" on this issue). The easier cases involve differences of well in excess of five years; indeed, one court has observed that "[t]he vast majority of cases finding that the 'gross disparity' threshold has been met . . . deal with differences of decades." *Id.* (citing cases shown in the footnote[8]). In *United States v. Doster*, 2024 WL 4563356 (N.D. Fla. Oct. 22, 2024), for example, the court concluded that a 30-year sentencing disparity (180 months versus 540 months) was a gross disparity. *See also, e.g., United States v. Lewis*, 2024 WL 4643948, *3 (M.D. Fla. Oct. 31, 2024) (20-year

_____

[8] *United States v. Donato*, 95-CR-223 (JMA)(AYS), 2024 WL 1513646, at *7 (E.D.N.Y. Apr. 8, 2024) (gross disparity given "65-year difference" between sentence being served and sentence likely to be imposed today); *United States v. Skeeters*, No. 05-530-1, 2024 WL 992171, at *3 (E.D. Pa. Mar. 7, 2024) (finding "gross disparity of 54 years" between sentence being served and sentence likely to be imposed today); *United States v. Ware*, No. 1:97-CR-00009-SCJ, 2024 WL 1007427, at *8 (N.D. Ga. Mar. 6, 2024) (finding gross disparity where defendant's sentence would "decrease by 14 years" if imposed today); *United States v. Martinez*, No. 2:01-cr-00564-TC, 2024 WL 866822, at *4 (D. Utah Feb. 29, 2024) (gross disparity where under current law defendant would receive "a sentence 50 years less than what he originally received"); *United States v. Allen*, No. 1:09-cr-320-TCB, 2024 WL 631609, at *6 (N.D. Ga. Feb. 12, 2024) (finding "difference between life imprisonment and 322 to 387 months imprisonment" to be grossly disparate).

sentencing disparity reflects a gross disparity). Still, though, several courts have concluded that lesser discrepancies are grossly disparate. *See, e.g., United States v. Adley*, No. 03-20678-CR-ALTONAGA, 2024 WL 1961484, at *5 (S.D. Fla. May 3, 2024) (holding that a 65-month sentencing disparity was "glaringly noticeable"; citing cases); *see also United States v. Miller*, No. 2:08-cr-01155-DCN-8, 2023 WL 7065545 (D.S.C. Oct. 26, 2023) (30-month sentencing disparity; decided before the amendment); *United States v. Shaw*, No. 5:13-cr-00025, 2021 WL 3007266, at *5 (W.D. Va. July 15, 2021) (22-month sentencing disparity; decided before the amendment); *United States v. Williams*, No. 14-cr-428, 2021 WL 5827327, at *6 (E.D. Va. Dec. 8, 2021) (43-month sentencing disparity; decided before the amendment). One court explained its reasoning as follows, in a case involving facts substantially similar to those before the Court:

> [B]y any humane measure, the difference between a 20-year and a 15-year mandatory minimum sentence is a gross disparity meriting consideration of a sentence reduction. Five years in federal prison versus five years of liberty is a sizable part of an individual's life, during which they must contend with the psychological, emotional, and social challenges inherent in incarceration. Five years of incarceration surely feels like an eternity for [the defendant]; it is almost one-quarter of his total sentence of 22 years and 15 percent of his remaining life expectancy.

*United States v. Robinson*, 729 F. Supp. 3d 242, 246 (D.R.I. 2024) (approvingly cited in *United States v. Monk*, No. 10-CR-00197 (ER), 2024 WL 3936351, at *5 (S.D.N.Y. Aug. 26, 2024)).

This Court finds that the five-year discrepancy between a 15-year mandatory minimum and a 20-year mandatory minimum is not what the Sentencing Commission had in mind when it referred to a "gross disparity." To be sure, this Court agrees with the sentiment expressed by the district court in *United States v. Robinson,* 729 F. Supp. 3d 242, 245 (D.R.I. 2024). Five years in federal prison is undoubtedly a long, difficult time. But that speaks more to the inherent nature of incarceration as a punishment and less to whether there is a gross disparity between a 15-year sentence and a 20-year sentence. When viewed through that comparative lens, the Court cannot find a gross disparity between a 15-year sentence and a 20-year sentence. (It bears repeating that Landeros didn't argue that a five-year disparity is a gross disparity.)

Granted, if the Court were guided only by its discretion, it would be inclined to reduce Landeros's sentence to 15 years. As noted above, during the sentencing hearing in this case, the Court expressed reservations as to whether the mandatory 20-year sentence was "reasonable and just." *See Sentencing Tr.*, Dkt. 186, at 9:8 to 10:12. But the Court is not free to reduce Landeros's sentence because it wishes it could have imposed a lesser sentence. And this Court cannot conclude that a 15-year sentence is grossly disparate from the 20-year sentence that was imposed. Nor is the Court persuaded that any of Landeros's other arguments—all of which have been carefully considered—amount to an extraordinary and compelling reason

warranting a sentence reduction. Accordingly, there is no need to proceed to the dangerousness analysis or consideration of the § 3553(a) factors. The Court will deny the motion.

## ORDER

**IT IS ORDERED that**:

1. Defendant's Motion for a Reduction in Sentence (Dkt. 216) is **DENIED.**

2. Defendant's Motion to Notify the Court of the Government's Failure to Comply with Local Rule 7.1(c)(1) Regarding Timely Response (Dkt. 217) and his Motion to Expedite (Dkt. 220) are **DEEMED MOOT.**

DATED: January 10, 2025

B. Lynn Winmill
U.S. District Court Judge